# COURT OF ERRORS AND APPEALS.

NOVEMBER TERM, 1858.

Between ABRAHAM STEVENS and others, executors, appellants, and JOHN A. POST and others, respondents.

It is not every answer in Chancery, although sworn to, which imports verity.

The rule of evidence which makes responsive answers proof for the defendant applies only to fair answers, not to those which, upon their face, are incredible.

In determining whether an answer becomes proof, unless overcome by superior testimony, it is proper to ascertain whether it simply admits and states facts called for in the bill, or whether it seeks affirmatively to assert a right in opposition to the complainant's demand, and to insist *upon a distinct fact in avoidance* as a defence; if it assumes the latter aspect, it must be supported by the testimony of witnesses.

An answer cannot become evidence of facts acquired through hearsay—there must be a test of respondent's conscience.

This cause was argued before the Chancellor, at May term, 1857, on the bill, answer, and proofs; and at the succeeding October term, the following opinion was read, and which was furnished to this court as containing the reasons of the decree in the court below.

WILLIAMSON, C. This is a bill filed by the legatees, under the will of Abraham Stevens, deceased, against the defendants, who are the executors of the will, for a settlement of the estate in this court. There is no objection raised to the jurisdiction of the court, nothing having been done by the executors towards settling their accounts in the Orphans Court of Passaic county, where letters testamentary were issued. The complainants are entitled to an account, as a matter of course.

The only matters in controversy between the parties, and which it is proper the court should settle before the cause goes to a master, are in reference to the liability of the defendants to account for some alleged assets of the decedent, which the executors have not included in the inventory which they filed with the surrogate.

The first item of dispute is in reference to the alleged indebtedness of Abraham Stevens, one of the executors. Abraham Stevens is a son of the testator, and takes, by the will, one half of the estate.

The bill alleges that the defendant, Stevens, at the decease of the testator, was indebted to him in about the sum of two thousand dollars, for money which the testator, in his lifetime, had let his son have, and that the said indebtedness was secured by bonds, promissory notes, or in some other way, and ought to have been put in the inventory; but that the defendant, either before or after the death of the testator, destroyed or cancelled the evidences of such indebtedness.

Stevens, by his answer, after denying that he was indebted to his father at the time of his death, makes the following statement in response to the allegations of the bill: that he did receive money from his father, from time to time during his lifetime; but it was understood and agreed between them, that the defendant never should be required to pay back the principal sum, but that, on the death of his said father, the several sums of money so advanced should belong to the defendant, and should not be demanded of him.

That the amount he received was seventeen hundred and thirty dollars, and that he received the same at divers times during the last twenty years; that whenever he received a sum of money of his said father, prior to the year 1842, he gave him his promissory note therefor, and whenever he received a further sum, the old note was given up, and a new note taken by him for the whole amount; that one note was given in the month of June,

1853, for the sum of $430, and that the other was given on or about the 1st day of May, 1842, for $1300, and that the said testator held no other notes or evidences of debt against him; that the testator, about three weeks before he died, being weak in body by reason of his sickness, and with a knowledge that he could not long survive, gave the said two notes to the wife of the defendant, who waited on him and nursed him during his last illness, and directed her to destroy them; that since that time he has never seen the notes, but is informed by his wife, and believes it to be true, that she did afterwards destroy them.

It is insisted, on behalf of the defendant, that laying out of view all the testimony that has been taken, the answer, by the principles which govern this court, discharges the defendant, Stevens, from all liabilities upon the notes; that the answer is responsive to the bill; that, while it makes a discovery of the notes which are the evidences of the defendant's indebtedness, it shows the discharge of the debt. If the answer had declared that the notes had been paid by the defendant, the answer would, undoubtedly, have been sufficient evidence of itself to discharge the defendant, until it was overcome by the required amount of testimony. But the defendant admits that the notes have never been paid, and to avoid their payment, sets up that the testator gave them to the defendant's wife, and directed her to destroy them.

Where an answer is put in issue, what is confessed and admitted need not be proved; but where the defendant admits a fact, and insists upon a distinct fact by way of avoidance, he must prove the fact so insisted on in defence. *Hart* v. *Ten Eyck*, 2 *Johns. Ch. R.* 62. The principle, as thus laid down by Chancellor Kent, has repeatedly been recognised by my predecessors in this court, and has been too firmly established to be permitted to be called in question. Notwithstanding the principle was disaffirmed by the Court of Errors of the state of New

York, on an appeal of the case of *Hart* v. *Ten Eyck*, as appears from note (*a*) to the case of *Woodcock* v. *Bennet*, 1 *Cowen* 744, and again by the same court in the last named case, I cannot but think that the principle, as laid down by the Chancellor, well established by the authorities to which he makes reference, and that it is the only safe and judicious rule by which the ends of justice can be secured. In the case of *Miller and Stiger* v. *Wack et al.*, *Sax.* 209, the Chancellor states the principle as it is affirmed in *Hart* v. *Ten Eyck*, and declares it settled.

In *Beckwith* v. *Butler*, 1 *Wash. Rep.* 224, a bill was filed in the Court of Chancery in Virginia against the administrator for distributive shares of the intestate's estate. The answer, among other things, sets up a gift from the intestate to the administrator of a bond, which formed the principal part of the personal estate.

This allegation in the answer was not supported by proof, and the Chancellor directed the administrator to account for the amount of the bond. The defendant appealed to the Court of Appeals, and the decree was affirmed; and the president, in delivering the opinion of the court, observed, that " the answer of a defendant in Chancery is not evidence where it asserts a right affirmatively in opposition to the plaintiff's demand. In such a case, he is as much bound to establish it by indifferent testimony as the plaintiff is to sustain his bill. It would be monstrous indeed, if an executor, when called upon to account, were permitted to swear himself into a title to part of the testator's estate." Other authorities, equally clear, will be found cited and commented upon in note (*a*) to *Hart* v. *Ten Eyck*, 2 *J. C. R.* 91.

In this case the testator was living at his son's house, with his son, at the time of his death. His personal estate consisted of bonds and promissory notes, amounting to upwards of $5000. More than one-third of this whole estate was in promissory notes of his son, which had been given by him to his father for money lent and advanced.

Three weeks before his death, and while the testator was on his death-bed, these notes were in his possession. He died leaving a will, with his son as one of his executors, into whose hands all the assets of the testator passed when he died. That executor is now called upon to account for the estate; and having alleged, in his answer, that the testator gave his notes to his wife, and told her to destroy them, and that his wife told him she had destroyed them, it is insisted that he is discharged from accounting for the notes, unless the complainants can overcome, by competent evidence, the fact which the defendant sets up in his answer to avoid their payment.

It appears to me that a plain statement of the case shows that it would be a reproach to the court, if there is any rule in administrating equity to sustain such a proposition.

It was said, on the argument, that if the oath of a party is resorted to, to charge him with a debt, it is but justice that he should be permitted to discharge himself by the same evidence. This is true to a certain extent. If the debt is discharged in the ordinary way, generally the defendant may discharge himself by his answer.

As is said by Lord Eldon, in *Thompson* v. *Lamb*, 7 *Vesey* 587, if the answer states, that upon a particular day he received a sum of money, and paid it over, that may discharge him; but if he says, that upon a particular day he received a sum of money, and upon a subsequent day he paid it over, that cannot be used in his discharge.

In the case before the court, if the defendant had said he had paid the notes, the complainants would have been obliged to overcome that allegation by proper testimony. This they might easily have done, as appears by the evidence taken. But when the defendant sets up that the testator gave the notes to the defendant's wife, and told her to destroy them, he sets up a defence which hardly admits of being disproved by evidence.

But while the answer clearly admits the debt, and discloses the fact, that the testator held two promissory notes against the said defendant as evidences of that debt, the disclosures which it makes, as to the alleged discharge of that debt, are not satisfactory.

Admitting the principle, as laid down in *Woodcock* v. *Bennet,* 1 *Cowen* 711, to be correct, that " where an answer to a bill filed is responsive to the bill, and within the discovery sought, it is legal evidence in all cases, and this whether it is a denial of some fact alleged by the complainant, or a fact set up by way of avoidance merely," the defendant does not bring himself within this rule so as to derive any benefit from his answer. Admitting it to be true, that a defendant, after admitting his liability, may set up a fact by way of avoiding or discharging it, if the matter, by way of avoidance, is accompanied by a statement of other facts altogether inconsistent and irreconcilable with that by which the liability is sought to be avoided, he is not entitled to the benefit of the fact by which he seeks to discharge his liabilty.

He may affirm a fact to be true, and by a statement of circumstances and other facts (made, it is true, to give credence to his allegation,) show it is without any foundation. If the facts and circumstances a defendant states, in his answer, show that the allegation upon which he relies is not consistent with truth, he cannot derive any benefit from it merely because he makes the allegation.

The statement which the defendant makes in reference to the fact by which he seeks to avoid his liability is not one within his own knowledge, and is not, therefore, evidence for him, any more than the hearsay evidence of a witness would be. He alleges that the testator, three weeks before his death, gave the note sto his, defendant's, wife, and told her to destroy them. The defendant does not pretend that he was present, or knew anything of the transaction of his own knowledge. He does not tell us what reason he has for affirming the fact so positively.

2 M*

The most favorable construction that his answer is entitled to is, that his wife gave him this information. Thus, while he affirms the fact, he shows that the fact is not within his own knowledge. It is, therefore, like all other hearsay evidence, to be rejected.

The answer is evidence for the defendant, and avails him as such, because it is a test of his conscience; but if his response is merely upon hearsay, his conscience is no way tested as to the truth, and of course his answer is not evidence for him. All the information we have of the matter by the answer is the simple statement, that the testator gave the two notes to the wife, and directed her to destroy them. Whether anything more transpired between them, the answer does' not state. It is incredible, that when notes to the amount of $1700 were directed to be destroyed in this manner, the process should have been so short and expeditious. When did his wife give him the information?

If it was done immediately (and it was natural it should have been), why did the son not speak with the father upon the subject? or, if he did speak to him, what was said? When did the wife destroy these notes? was it before or after the testator's death? The answer does not state the time, and it is very apparent that it was purposely concealed.

All the information given is, that the defendant is informed by his wife, and believes it to true, that she afterwards did destroy them. Again, the statement is one of a character which ought not to be credited, unless testified to by a disinterested witness. If this old man, when upon his death-bed three weeks before he died, being weak in body by reason of his sickness, (as the answer states) gave to the wife of the defendant his notes, amounting to $1700, and directed her to destroy them, and she afterwards did destroy them without calling any one to be a witness of the transaction, the defendant ought not to be discharged from paying those notes, and no

method can be devised by which the defendant can, in this court, obtain the benefit of his wife's evidence for that purpose.

But I think the answer is overcome by the testimony in the cause. The rule is, that the answer must be overcome by two witnesses, or, there must be one witness against the direct and positive averment of the answer, corroborated by circumstances. *Pember* v. *Mathers,* 1 *Bro.* 52.

The existence of the indebtedness of the defendant to his father is proved by several witnesses, and the amount of the debt by at least one witness. We avoid, therefore, the embarrassment of the defendant's being charged only by his own answer, and the supposed hardship of not permitting a man to discharge by the same evidence that he charges himself. His allegation is, that the notes were given to his wife three weeks before the old man died; and to show that there is no misapprehension as to time, it is stated to have been while he was sick, and the defendant's wife nursing him, and with the knowledge, on his part, that he could not long survive. Yet, on the morning of his father's death, or a few days after, he told his co-executor that the transaction took place at the time of an occurrence which happened in the month of October, three months before the death of the testator. The conduct of the old man—his particularity in exacting the notes—drawing them with interest, and not trusting them out of his own hands, with various other circumstances in connection with the fact that the testator died under the defendant's roof, all the testator's private papers being under the defendant's control, and that no reason is suggested why the notes should have been delivered to Mrs. Stevens, or why their destruction should have been kept secret until the old man's lips were sealed by death, all go to discredit the statement upon which the defendant seeks to avoid payment of the notes.

The defendant gave some evidence to show, by the de-

claration of his father, that it was not his intention the notes should be paid after his death.  They were made in connection with other casual remarks, and certainly with no idea that they would be treasured up as testimony to be used on any future occasion.  They are given by the witness with much vagueness and uncertainty, and without pretending to give the language of the testator. Their general purport seems to be this, that the testator, while speaking of the debt his son owed him, said it would all be his, or would all come back to him when he, the testator, died.  This is true; for, by his will, he gives his son one half of his estate, and in this way he does get more than all of the debt back again.  There is no doubt on my mind as to the propriety of compelling the defendant, Stevens, to account for the two notes, as he admits them in his answer.  He may be permitted to show before the master any payments made on account of principal or interest.

As to the personal property which was in the defendant's house, he ought not to account.  There is evidence enough of the fact, that the testator made a division of the household property, as alleged in the answer, and that the portion of it in possession of the defendant fell to him in the division.

As to the Van Cleve transaction, there is not evidence enough to charge the defendant with any liability.

*William Gledhill*, counsel for appellant.

*A. B. Woodruff*, counsel for respondent.

The opinion of the court was delivered by

OGDEN, J. The only debatable question raised in this cause is, whether the answer of Abraham Stevens, jun., in some of its parts, is so responsive to the bill of complaint that it becomes evidence in support of his defence, unless it has been overcome by the counter testimony of two

witnesses, or of one witness and corroborating circumstances. It is proper to remark here, that every answer in Chancery does not import verity, although it may have been sworn to. It may be obviously contradictory and inconsistent. The rule which makes responsive answers evidence for defendants *ex necessitate* applies only to fair answers, and not to those which upon their face are incredible. 1 *Halst. Ch. Rep.* 151. Abraham Stevens, sen., late of Passaic county in this state, died on the 10th of January, 1854, leaving the appellants executors of his last will, which bears date the 22d of October, 1849. On the 26th of January, 1854, the executors duly proved the will, and they also have filed an inventory of the personal estate, with an appraisement thereof, in the proper office. The bill is filed by parties interested as legatees under the will, requiring from the executors an account and a settlement of the estate in the Court of Chancery. It seeks, among other things, to surcharge the inventory and account with an alleged indebtedness of Abraham Stevens, jun., to the testator, at the time of his death, in the sum of about $2000, and it prays that the executors may be decreed to pay the same, together or with the residue of the estate of the deceased, over to them, according to their several shares and portions, as established by the will. The specific charges in the bill touching the alleged indebtedness are, that the said executor, at the time of his father's death, was indebted to the testator in a large amount for moneys had from him, and that the indebtedness was secured by bonds or by promissory notes, or in some other mode, and that the same should have been put upon the inventory of the effects of the deceased; that at the time of proving the will and of making the inventory, the said executor well knew that he was indebted to his father's estate in the sum of $2000, or thereabouts; and that, either before or after the death of his father, he destroyed or concealed the evidence of his indebtedness which his father had held.

The prayer of the bill asks that the executors may set forth and discover, in the first place, what moneys the said Abraham Stevens, jun., had received from his father in his lifetime, and what evidences of the indebtedness were given by him to his father, setting forth dates and amounts; in the second place, if any such evidences of in-debtedness were given, what has become of them, and whether the said executor, Abraham Stevens, jun., had not destroyed or concealed them; and in the third place, if the said testator, in his lifetime, gave or transferred any such evidence of indebtedness to another, then to whom, when, and for what consideration, and under what preceding and attending circumstances. And the complainants further prayed, that the amount of the estate of the testator might be ascertained under the direction and decree of the court; and that the shares and portions of the estate to which they are entitled under the will might be ascertained, and be respectively decreed to them, and that the executors might be directed to pay the same to them.

The defendants filed a joint and several answer, which was put in issue. Witnesses were examined, and the cause was argued before the Chancellor, in May, 1857, on the bill, answer, and depositions. In October following, an interlocutory decree was made, in which Abraham Stevens, jun., is charged, as executor, with two promissory notes, which were disclosed by his answer, amounting together to the sum of seventeen hundred and thirty dollars, and such interest as might be due thereon. The decree was appealed from, upon the ground that the said defendant is not chargeable, as such executor, with the amount of the said two notes, nor with the interest on the same.

The decision of the Chancellor is said to be erroneous, because he did not give to the appellant, Stevens, the full and legal benefit of his answer as evidence, his counsel claiming that in parts of it, alleged to be fully and critic-

ally responsive to the bill, the said appellant has shown that he was not indebted to the testator at the time of his death, and that the answer on that point has not been overcome by other evidence, according to the rules and practice of courts of equity. In testing the soundness of the appellant's position, it will be necessary to examine with some minuteness the portions of the answer upon which he relies as furnishing plenary evidence of his non-indebtedness; to compare them with the allegations and prayer of the bill, and thus to determine whether they simply admit and state *facts* called for in the bill, or whatever they seek affirmatively to assert a right, in opposition to the complainant's demand, and to insist upon a *distinct fact in avoidance* as a defence.

The answer of the said appellant, in the outset, denies any indebtedness whatever to his father at the time of his decease. This is a strict reply to the first charge of indebtedness made against him by the bill; and if the complainant had made no other charge against him, he would have been entitled to the full benefit of the rule of evidence which he invokes. So, also, his denial that, at the time of proving the will and making the inventory, he knew or believed that he was indebted to the estate of the deceased in any sum whatever, is strictly responsive to the bill.

In answer to the first prayer of the bill, he states that he had received money from his father, from time to time, during the preceding twenty years, and that, prior to the year 1842, whenever he received a sum of money from his father, he give his promissory note to him therefor; and that whenever he received a further sum, the former note was taken up, and a new one was given for the whole amount; that about the first of May, 1842, he give his note for $1300, and in June, 1853, he gave his note for $430, which notes were payable to the said testator, with interest; and that no other notes, bonds, mortgages, or other evidences of debt were given by him to his father,

or to any other person for him. The defendant, Stevens, further states, in this connection, that the interest on the said notes was always settled, and the same regularly endorsed thereon as paid; and that all the interest on the first note given was liquidated and discharged by him up to the first of May, 1852, and so endorsed thereon by the deceased. In answer to the inquiry of the bill, as to what has become of the notes, and whether he has not concealed or destroyed them, the defendant states, in direct terms, that neither before nor after his father's death did he destroy or conceal the said promissory notes.

It then is manifest, from the answer, that on and after the first of May, 1852, when the last interest was paid, the testator held the promissory note of the appellant for the payment of $1700; and that, in June, 1853, (a little more than six months before his death) he received the appellant's second note for the payment of the further sum of $430 and interest. The existence of an indebtedness to the amount of $1730, with accruing interest, is thus disclosed and established; and, if the appellant has not discharged himself from liability to pay the debt by competent and satisfactory evidence, the account of the executors must be charged with the same. If he had said, in the answer, that he had paid the notes to his father, the statement of that fact would have been responsive to the bill, and it would have put the complainant to the necessary countervailing proofs; because the conscience of the party answering would have been tested upon a a matter within *his own* knowledge, and his statement should avail him as evidence. The appellant, therefore, does not rely upon *payment* of the notes as an excuse for not having charged himself with the amount thereof in the inventory of the estate. His case is put upon other distinct, and as appears to me inconsistent grounds. The *one*, that when the moneys represented by the said notes were received from his father, it was understood and agreed between them that the appellant should never be

required to pay back the principal; but that, on the death of his father, the money so had should belong to the appellant; that the testator never intended to call upon him for payment of the principal, but it was their understanding that the interest should be collected and received when due.

This part of the answer cannot be taken as evidence for the defendant. It contains the statement of a fact, which affirmatively asserts a right in opposition to the equity of the complainant's bill, and which can only be supported by the testimony of other witnesses or proofs. By it the appellant seeks to avoid a legal liability resulting from the giving of his promissory notes, although he does not allege that, after the testator's death, he cancelled the notes by virtue of that alleged mutual agreement and understanding. It would be extremely dangerous to permit a person acting in a fiduciary capacity, and entitled to the custody and inspection of the papers of his *cestui que trust*, to swear *himself* into a title to a part of the estate, or when called upon to account, to *discharge* himself by his answer from a legal liability.

An answer strictly responsive can be proof for the defendant of no fact which he would not be permitted, by the rules of law and of evidence, to make out by indifferent testimony. The appellant seeks, by this statement in his answer, to show orally, that whenever he gave his promissory notes in regular form to his father for money had and received, at those times it was agreed and understood by his father that those notes were never to be paid. By such testimony, the substance of the written contract is attempted to be changed *orally*. The question of consideration is always open between the original contracting parties; but I am not aware of any rule which will permit a party to impugn and destroy his own written contract by oral proof of a simultaneous fact.

The other ground on which the appellant puts himself is, that his wife has told him that the testator, about three

weeks before his death, from motives of gratitude, gave the two notes to her, directing her to destroy them, and that she informed the appellant that she did destroy them. It has been observed before that the two grounds are inconsistent with each other, and they certainly are. If when the notes were given, it was a part of the contract that the appellant was not to pay them, how could the testator in good faith, with the full knowledge that he could not long survive, present those notes to the appellant's wife, in remuneration for her care and services? If his object was to have them cancelled during his life, why did he not take an opportunity of doing it in the appellant's presence, so that he could have been satisfied that their understanding had been carried out, and also could have sworn to the fact from personal knowledge, if called to account. But the appellant's difficulty in this part of his answer is, that it is no test of his *conscience*—what he has herein stated is only hearsay.

It is true that the bill called upon him to answer whether the testator gave or transferred the notes to another, and to whom, and for what consideration; but the prayer could be fully met only by an answer based upon his personal knowledge. It may be all true that Mrs. Stevens told the appellant all which he has stated in his answer as coming from her, and yet the notes in question may have been secretly taken by her, or by some one else who had access to the testator's private box, and may have been destroyed or secreted without his authority. There is no evidence before us to repel such a presumption.

. I therefore am clearly of opinion that the appellant's answer respecting the discharge from his indebtedness, according to the face of the notes, and the alleged cancellation of the notes by the direction of the testator, furnishes him with no evidence of those facts; and as he has not proved them by other competent testimony, the decree of the Chancellor should be affirmed with costs, to

be paid out of the individual funds of the said Abraham Stevens, jun.

The case must be remitted to the Court of Chancery, to be therein proceeded with according to the rules and practice of that court.

The decree of the Chancellor was affirmed by the following vote:

*For affirmance*—CHIEF JUSTICE, Judges HAINES, CORNE-LISON, RISLEY, WOOD, ELMER, OGDEN, SWAIN, WHELPLEY, POTTS, VALENTINE.

*For reversal*—None.